| | | |
|---|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | | **NOT FOR PUBLICATION** |
| In re | : | Chapter 11 |
| WORLDCOM, INC., *et al*., | : | Case No. 02-13533 (AJG) |
| Reorganized Debtors. | : | (Confirmed Case) |
| SHARY EVERETT, on behalf of herself and all others similarly situated,<br>Plaintiff, | : | |
| v. | : | Adversary Proceeding<br>No. 07-01792 (AJG) |
| MCI, INC., a Delaware Corporation,<br>Defendant. | : | |

**OPINION AND ORDER REGARDING SHARY EVERETT'S MOTION
TO COMPEL PRODUCTION OF DOCUMENTS
AND INTERROGATORY RESPONSES**

**A P P E A R A N C E S**

ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York 10020

    Mark D. Silverschotz, Esq.
        Of Counsel

GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, California 94108

    Daniel C. Girard, Esq.
    A. J. De Bartolomeo, Esq.
    Jonathan K. Levine, Esq.
    Aaron M. Sheanin, Esq.
        Of Counsel

Attorneys for Individual and Representative

Plaintiff Shary Everett

WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002

    Alfredo R. Pérez, Esq.
    Lydia Protopapas, Esq.
        Of Counsel

MUNGER, TOLLES & OLSON LLP
355 S. Grand Avenue 35th Floor
Los Angeles, California 90071

    Henry Weissmann, Esq.
    Kristin S. Escalante, Esq.
        Of Counsel

Attorneys for Defendants, MCI, LLC, et al.


ARTHUR J. GONZALEZ
United States Bankruptcy Judge


    This matter is before the Court on the motion of plaintiff Shary Everett ("Plaintiff"), the proposed class representative in a class-action lawsuit against WorldCom and its subsidiary MCI, Inc. (collectively, "Debtor") for an order directing Debtor to respond to eighteen requests for production and one interrogatory.


**I.  JURISDICTIONAL BACKGROUND**

    This adversary proceeding (the "Class Action Case") was commenced on July 19, 2005 in the United States District Court for the District of Arizona.  Debtor moved in that court to transfer the case to the bankruptcy court, intending the case to be transferred to

the court where its bankruptcy proceeding was pending.[1]  The Arizona District Court, by order dated May 24, 2007, transferred the case to the United States Bankruptcy Court for the District of Arizona.  Thereafter, by order dated June 18, 2007, the Arizona Bankruptcy Court transferred the Class Action Case to the Court, where it was assigned adversary proceeding number 07-01792.

Plaintiff has filed a motion to withdraw the reference with the United States District Court for the Southern District of New York.  That motion has not been ruled upon as of this date.  The Court has jurisdiction over this matter under 28 U.S.C. §§ 157(a) and 1334(b) and under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.).  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).  Venue is proper before the Court under 28 U.S.C. §§ 1409 and 1412.

## II.  PROCEDURAL STATUS

According to the docket from the Arizona District Court, the following activity, *inter alia*, occurred in this case.  On September 8, 2005, Debtor moved to dismiss the Class Action Case on the pleadings.  That motion was denied by order dated September 29, 2006.

On May 30, 2006, Plaintiff moved to certify the class.  Debtor requested an extension of time to respond to that motion, which was granted by order dated June 15, 2006.  The

---

[1] Although the Debtor's Modified Second Amended Joint Plan of Reorganization (the "Plan") was confirmed by the Court's Order dated October 31, 2003, which was prior to the commencement of the Class Action Case, Article XII of the Plan provided that the Court retained jurisdiction to, *inter alia*, "[h]ear and determine any and all adversary proceedings, applications, and contested matters," "hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan," and "hear any other matter not inconsistent with the Bankruptcy Code."

3

Arizona District Court entered an order on June 15, 2006, granting Debtor's motion for an extension of time to respond. The order stated that if the then-pending motion to dismiss was denied – which it was on September 29, 2006 – the court would establish a due date for the response. On October 16, 2006, the Arizona District Court ordered Debtor to file a response to the class certification motion on or before November 29, 2006. There is no indication on the docket from the Arizona District Court or the Arizona Bankruptcy Court that any response was filed by the Debtor, and no response has been filed by the Debtor in the Court. It does not appear from the docket that any ruling has been made on the motion to certify the class.

The docket from the Arizona District Court also reflects that on October 31, 2006, Debtor filed a motion for judgment on the pleadings or in the alternative for summary judgment. Plaintiff filed a response on November 17, 2006, and Debtor filed a reply on November 30, 2006. No decision on the motion appears on the docket from the Arizona District Court .

### III.  APPLICATION OF DISCOVERY TO THE CASE AT PRESENT

As noted above, Plaintiff's motion for class certification has not been ruled upon, nor has Debtor's motion for judgment on the pleadings or summary judgment. Plaintiff has not indicated that it requires responses to these discovery requests to refute the motion for judgment on the pleadings or summary judgment, and indeed, Plaintiff responded to that motion even before the allegedly non-responsive discovery that Plaintiff seeks to compel in this motion was received.

Given the present posture of the case, the only issue that the requested discovery bears upon at present is the question of class certification. At the class certification stage the plaintiff must

(1) demonstrate numerosity, typicality, commonality, and adequacy of representation (whether the proposed class representative's claims are adequate to represent the class);
(2) demonstrate that common "questions of law or fact" predominate over "any questions affecting only individual members;" and
(3) establish that the class action mechanism is "superior to other available methods for the fair and efficient adjudication of the controversy."

*Fed. R. Civ. P. 23(b)(3)*.

As a general matter, the "Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001). The rule "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Fed.R.Civ.P. 23(b)(3) advisory committee's note to 1966 amend.*

In ruling on this motion, the Court determines that it is appropriate to limit discovery at this time to matters that bear directly on the class certification issue. This is without prejudice to any further discovery that may be undertaken should the case proceed on the merits.

Under Fed. R. Civ. P. 26(b)(1), parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. The term "relevant" incorporates the definition of Fed. R. Evid. 401, which states: "Relevant evidence" means evidence

5

having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Under Fed.R. Civ. P. 34(a)(1), a party may may serve on any other party a request within the scope of Fed. R. Civ. P. 26(b) to produce and permit the requesting party to inspect, copy, test or sample, *inter alia*, any designated documents, electronically stored information, or tangible things. The contents of the request must describe with reasonable particularity the item or category of items sought, and specify a reasonable time, place or manner for the inspection and related acts.

In deciding discovery issues, the court is afforded broad discretion. *See Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir.2004). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). Relevance is to be broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D.Tex.2005). The party resisting discovery bears the burden of showing why discovery should be denied. *See Blakenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.1975).

## IV. INTERROGATORY NO. 1

Interrogatory no. 1 requests the number of persons for whom MCI established an account with a minimum user fee based upon data from certain information received from a local exchange carrier. This interrogatory is directly applicable to the class certification issue, as it applies to the numerosity element.

In its response, Debtor stated that it interpreted the interrogatory to apply to "consumers in all states, including California (1) for whom an account was established through a LEC reconciliation or account maintenance transaction; (2) whose account was established after *or was still in existence* after April 20, 2004; (3) where a basic Dial-1 plan was established because the consumer did not select a particular MCI calling plan (4) the consumer had no Dial-1 long distance usage; and (5) minimum usage or monthly fee was charged after April 20, 2004." (Emphasis added). In response to the interrogatory, Debtor stated that "the total number of consumers with accounts established as a result of a LEC reconciliation or account maintenance transaction is: 28,884." The emphasized language implies that the consumers that are included in the responsive number includes all consumers regardless of the date their account was established that were charged a minimum usage fee after the effective date of the Debtor's plan. Although Plaintiff previously alleged that because Debtor's customers that were charged minimum user fees prior to the bankruptcy petition were identifiable by Debtor but were not given notice of their right to file a claim against the Debtor in the bankruptcy case, those customers' claims were not discharged. However, Plaintiff has since taken the position in pleadings previously filed in this action that "the damages to Plaintiff and to putative class members were caused by [Debtor's] improper billings

7

*during the post-petition and/or post-confirmation periods.*" *Memorandum of Law in Support of Motion to Withdraw the Reference*, at p.6, fn. 2. (Emphasis added).

The Court finds that the Debtor's response to this interrogatory is incomplete. Because the post-effective date number of customers has already been provided, Debtor shall supplement its answer to Interrogatory no. 1 to set forth the number of customers who were charged a minimum user fee on or after the petition date and before the effective date.

## V. REQUESTS FOR PRODUCTION

The eighteen requests for production ("RFP's") seek documents in the following categories

1. Documents that reflect, discuss or refer to Debtor's decision to assess minimum usage or monthly service fees on consumers who were enrolled in default calling plans or who had no long distance usage (RFPs 1 - 4, 8, 9);
2. Documents that reflect, discuss or refer to any analysis performed by Debtor concerning the imposition of minimum usage or monthly service fees (RFP 6);
3. Documents that reflect, discuss or refer to Debtor's policies or practices for canceling long distance service when asked to do so by consumers (RFP 7, 10 );
4. Documents that reflect, discuss or refer to the use of data obtained from Local Exchange Carriers in connection with the "LEC Reconciliation Process" or "Account Maintenance Transactions" (RFPs 5, 12, 13, 14); and
5. Documents that reflect, discuss or refer to Debtor's policies or practices for collecting minimum usage or other monthly service fees (RFPs 17, 18).

These categories were enumerated by Debtor, see Objection to Plaintiff Shary Everett's Motion to Compel; Memorandum of Law in Support Thereof, at p.1. For the purposes of this ruling, the Court finds these categories to be appropriate.

8

*Categories 1 and 2*

Documents requested in categories 1 and 2, relating to Debtor's decision to establish the minimum usage or monthly fee plan and any underlying analysis concerning those decisions do not apply to the class action certification issue. There is no allegation that decisions to apply the fees in dispute were made on an individualized, customer-by-customer basis. Rather, these fees were charged to customers based on a uniform policy. Accordingly, no further response to these documents is necessary because it would not be likely to lead to admissible evidence on the issue of class certification.

*Category 3*

Documents requested in category 3, related to Debtor's policies or practices for canceling long distance service when asked to do so by consumers are reasonably calculated to lead to the discovery of admissible evidence pertaining to the numerosity, typicality and commonality of class claims. It is not clear from the pleadings how many customers actually requested refunds. To the extent that refunds were requested and given may impact these elements in determining issues of class certification. Production of documents in this category is appropriate.

*Category 4*

Documents requested in category 4, relate to use of data obtained from Local Exchange Carriers in connection with the "LEC Reconciliation Process" or "Account Maintenance Transactions."

9

Request for Production no. 5 seeks "All COMMUNICATIONS between MCI and any Local Exchange Carrier (Access Provider) that discusses the imposition of [a minimum user fee] on end users."  This request is not likely to lead to the discovery of admissible evidence on the issues to be determined in class certification.  Therefore, the Debtor's previous answer need not be supplemented.

Request for Production no. 12 seeks "All DOCUMENTS that discuss or refer to the use of data obtained from Local Exchange Carriers (Access Providers) in connection with the 'LEC Reconciliation Process.'"

Request for Production no. 13 seeks "All DOCUMENTS that discuss or refer to the use of a LEC RECON LIST or ACCOUNT MAINENANCE INFORMATION received from Local Exchange Carriers (Access Providers) to identify persons who are presubscribed to MCI."

Request for Production no. 14 seeks "All DOCUMENTS that discuss or refer to MCI's creation of accounts that provide for an MUF FEE, based on data from a LEC RECON LIST or ACCOUNT MAINTENANCE INFORMATION received from Local Exchange Carriers (Access Providers)."  Debtor objected to each of these requests for production in the same language, stating

> Plaintiff filed her motion for class certification without the need for any discovery.  If the motion for class certification is denied, then plaintiff's discovery requests will seek irrelevant information and become moot. Plaintiff's discovery requests seek large volumes of information and would impose a significant cost and burden on MCI.  Accordingly, MCI objects to Plaintiff's discovery requests prior to the resolution of the motion for class certification.

As acknowledged by Plaintiff, if class certification is granted the class in this case will consist of those customers of MCI that were charged a minimum user fee after the petition date.

Documents requested in Requests for Production nos. 12, 13 and 14 apply to certain issues in class certification. To the extent that members of any class that may be certified had different precipitating events that resulted in the members being assigned to minimum user fee plans, subdivision of the entire class into sub-classes may be appropriate. Under Fed. R. Civ. P. 23(c)(5), "When appropriate, a class may be divided into subclasses that are each treated as a class . . . ."

Requests for Production 12, 13 and 14 are overbroad as to class certification issues because they are unlimited as to the time that any customer may have paid a minimum user fee. However, when limited in scope, the requests appear reasonably calculated to lead to the discovery of admissible evidence on the questions of numerosity, typicality, and commonality. In addition, documents responsive to these requests appear likely to lead to admissible evidence on the issue of division into subclasses, if appropriate. Therefore, Debtor shall provide documents responsive to the Requests for Production of Documents nos. 12, 13 and 14, limited to those customers charged a minimum user fee after July 22, 2002 that were placed into such accounts based on information provided by a Local Exchange Carrier.

While response to these requests may involve "large volumes of documents" and "impose significant costs and burdens" on Debtor, the mere fact that responding to discovery may involve large volumes of documents or may be burdensome does not, by itself, excuse compliance with discovery requests.

11

*Category 5*

Documents requested in category 5, related to Debtor's policies or practices for collecting minimum usage or other monthly service fees do not apply to the class action certification issue. As stated previously, there is no allegation that decisions to apply the fees in dispute were made on an individualized, customer-by-customer basis. Rather, these fees were charged to customers based on a uniform policy. Accordingly, no further response to these documents is necessary because it would not be likely to lead to admissible evidence on the issue of class certification.

## VI.  FURTHER CASE MANAGEMENT MATTERS

As noted above, certain matters previously filed in the Arizona District Court remain pending. Plaintiff filed a response to Debtor's motion for judgment on the pleadings or summary judgment was responded to, and Debtor filed a reply to the response. In addition, Plaintiff filed a motion for class certification to which no response appears on the dockets in either the Arizona District Court or the Arizona Bankruptcy Court. The Court will conduct a status conference on Tuesday, February 19, 2008 to address these matters and schedule further proceedings in this case.

For the reasons set forth above, it is hereby

ORDERED that Debtor shall supplement its answer to Interrogatory no. 1 to set forth the number of customers who were charged a minimum user fee on or after the petition date and before the effective date; and it is

12

ORDERED that Debtor shall provide documents responsive to the Requests for Production of Documents nos. 12, 13 and 14, limited to those customers charged a minimum user fee after July 22, 2002 that were placed into such accounts based on information provided by a Local Exchange Carrier; and it is further

ORDERED that Plaintiff and Debtor shall appear before the Court on February 19, 2008 to further discuss the matters at issue in this case.

Dated:   New York, New York
         February 14, 2008

                                            s/Arthur J. Gonzalez
                                            UNITED STATES BANKRUPTCY JUDGE